U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 06-02049

ADVERSARY PROCEEDING NO: 07-80053

ORDER

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**02/29/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 03/03/2008

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Lisa S. Bearden,<br>                              Debtor(s). | C/A No. 06-02049-DD<br><br>Adv. Pro. No. 07-80053-DD<br>Chapter 7 |
| Lisa S. Bearden,<br>                              Plaintiff(s),<br><br>v.<br><br>Melvin Jackson, Elizabeth Jackson, Melody Jackson, Makala Jackson and Madison Jackson by and through their parents, Melvin Jackson and Elizabeth Jackson,<br>                              Defendant(s). | **ORDER** |

THIS MATTER is before the Court on an adversary complaint filed by Lisa Bearden ("Debtor") against Melvin Jackson, et al ("Defendants"). This adversary arises from civil litigation between the parties in state court. Debtor is one of numerous named defendants in a state court civil action which alleges causes of action based on the Residential Lead-Based Paint Hazard Reduction Act ("RLBPRA") codified in 42 U.S.C. 4852 *et. seq.* and the accompanying regulations as adopted in Title 24 C.F.R. 35 *et. seq*. Debtor seeks an order of the Court determining that the state court action was commenced and pursued in violation of the discharge injunction provided by 11 U.S.C. § 524 and further seeks damages for the violation. Defendants seek an order that the liability was not discharged.

*Facts[1]*

1.      Debtor filed for relief under Chapter 7 of the Bankruptcy Code on May 18, 2006.

2.      On July 21, 2006 the Chapter 7 Trustee filed his Report of No Distribution.

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

3. On September 5, 2006 an order discharging Debtor was entered and the case was closed.

4. On April 3, 2007 Debtor filed a Motion to Reopen Case[2] for the purpose of filing an adversary proceeding to enforce the discharge injunction. This adversary was filed by Debtor on April 19, 2007. By way of counterclaim the Defendants ask this Court to determine the dischargeability of Defendants' claim against Debtor.

5. On January 16, 2007 Defendants filed a civil complaint in the Court of Common Pleas in Orangeburg County, South Carolina.

6. Debtor answered the Defendants' state court complaint on February 7, 2007 and asserted Debtor's discharge as a complete defense to the action, stating that Debtor's liability for any debt arising from the pre-petition transaction was discharged pursuant to 11 U.S.C. § 727.[3] There is no indication that Defendants were aware of Debtor's bankruptcy filing before this date.

7. Debtor's answer to the state court complaint put Defendants on notice of Debtor's bankruptcy case. Defendants continued with the state court litigation against Debtor.

8. Debtor did not list the Defendants on her bankruptcy schedules. She indicated in her trial testimony that she did not list the Defendants as creditors because she was unaware of any potential claim by them.

9. Debtor owned real estate at 1323 Broughton Street Orangeburg, South Carolina. Located on the Debtor's real estate were two improvements or structures that were at some time in the past used as dwellings.

---

[2] Debtor's Motion to Reopen was later withdrawn as this Court does not require reopening a case to file an adversary complaint to enforce the discharge injunction.
[3] Further reference to the Bankruptcy Code shall be by section number only.

2

10. On or about February 23, 2003 Debtor sold Defendants one of the structures for the sales price of $2,500.00. The understanding of the parties was that Defendants were to move the structure from Debtor's land to another location. Defendants' intention was to remodel the structure and use it as their primary residence.

11. The transaction was memorialized by a receipt hand-written by Debtor at the time Defendants tendered the purchase price.

12. The Defendants eventually had the structure moved and began renovations. At some point the Defendants began to have medical problems. They then consulted a physician and it was determined that their medical problems were the result of lead poisoning, and the most likely cause for the Defendants' elevated lead levels was exposure to lead based paint.[4]

13. Debtor bought the real estate in 2002, and did not intend to use the structures. Debtor never had either of the structures inspected.

14. Debtor stated that she was not aware of the disclosure requirements of the RLBPRA when she sold the structure to Defendants. However, she did acknowledge that at some point after the sale to Defendants she reviewed her closing documents and found a "paper" she signed that discussed her ten (10) day inspection right under RLBPRA. *See Exhibit A ¶ 13*.

---

[4] While the Court can make the finding that Defendants had elevated lead levels based on Mrs. Jackson's testimony, the Court is unable to make a finding on the extent of damages associated with the lead levels or that the source of the lead was the structure sold by Debtor to Defendants. The only evidence offered for these assertions was testimony by Mrs. Jackson regarding statements made by her doctor, statements made by an employee of the Department of Health and Environmental Control ("DHEC"), and statements made in a letter from DHEC which Defendants claim substantiates these claims. The Court disallowed this evidence as inadmissible hearsay, and has not considered the statements or the letter for purposes of this opinion. The Court found Mrs. Jackson's testimony to be creditable and the Court has sympathy for the problems Defendants have encountered. However, the Court does not believe these assertions are relevant to the issues before the Court. The issues are (1) whether Debtor's potential debt has been discharged and (2) whether Defendants violated the discharge injunction. If the debt is determined to have been discharged then Debtor must be dismissed from the state court action. If the debt is determined not discharged then liability and damages will be determined by the state court litigation.

15. Debtor further testified that "the second time [Mrs. Jackson] came to look at the house she asked me about [lead paint], I told her I didn't know anything about lead, if she would like to have somebody come in and look at it before she purchased it that would be fine with me." Mrs. Jackson testified that Debtor made no such statement and that Debtor never made any mention of lead paint.

16. Mrs. Jackson testified that Debtor did not give Defendants 10 days to inspect the structure for lead based paint, never mentioned lead based paint, and did not give Defendants a pamphlet required by RLBPRA.

*Law/Analysis*

*A. Dischargeability*

We begin with the scope of Debtor's discharge. Section 727 of the Bankruptcy Code provides that a "discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter … whether or not a proof of claim based on any such debt or liability is filed." *§ 727(b)*. Debtor received a discharge under § 727(a) on September 5, 2006. Thus, all prepetition debts were discharged on that date regardless of whether a proof of claim was filed for the debt[5] in the case. However, an individual debt can be nondischargeable if it falls within one of the exceptions to discharge specified in § 523. Section 523 states in relevant part,

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

---

[5] The Court uses the term "debt" in this opinion to refer to the potential liability that Debtor may have to Defendants if found liable in state court. "Debt" is defined as liability on a claim. *See 11 U.S.C. § 101(11)*. A "Claim" is a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *11 U.S.C. § 101(5)(A)*.

4

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

  (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

    (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

    (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

*§ 523(a).*

  "The standard of proof for the dischargeability exceptions in 11 U. S. C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Pursuant to § 523(a)(3) two categories of debts are covered, each with different requirements. Either the debt is one that does not fall under § 523(a)(2), (4), or (6) and is governed by § 523(a)(3)(A), or the debt does fall under § 523(a)(2), (4), or (6), in which case § 523(a)(3)(B) is applicable.

  To simplify the language of the statute, § 523(a)(3)(A) means that an unscheduled debt that does not fall under 523(a)(2), (4), or (6) is discharged under 727(a) unless the creditor was not given an opportunity to timely file a proof of claim. According to § 523(a)(3)(B) an unscheduled debt that falls under 523(a)(2), (4), or (6) is nonetheless discharged pursuant to § 727(a) unless the creditor was not given the opportunity to timely file a

5

proof of claim *and* timely request a determination of dischargeability.[6] The Bankruptcy Court for the Eastern Division of Virginia summarizes the above concept rather well, stating,

> [A] discharge under [§ 727(a)] … discharges the debtor from all debts that arose before the date of the order for relief under this chapter …." *11 U.S.C. § 727(b)*. "All" is the key word. The statute is unambiguous in that it "discharges every prepetition debt, without regard to whether a proof of claim has been filed …," *Zimhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 469 (6th Cir. 1998), and does not distinguish "between scheduled and nonscheduled debts." *Karras v. Hansen (In re Karras)*, 165 B.R. 636, 638 (N.D. Ill. 1994); *see also Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434 (9th Cir. 1993) (per curiam) (O'Scannlain, J., concurring) (stating that section 727 says nothing about "whether the debt is or is not scheduled").
>
> The only exceptions to discharge for unscheduled debt are found in two subparagraphs of § 523(a)(3), and these exceptions are tied to whether an unscheduled creditor receives notice or has actual knowledge of the bankruptcy in time to file a timely proof of claim or to file a dischargeability complaint. To simplify, § 523(a)(3)(A) excepts from discharge an unscheduled debt where the omission prevents the creditor from filing a timely proof of claim. Additionally, § 523(a)(3)(B) excepts from discharge an unscheduled debt that falls within one of the exceptions to discharge specified in § 523(a)(2), (4) or (6) if the omission prevents the creditor from filing a timely proof of claim and a timely request for determination of dischargeability under one of these sections. *See In re Woolard*, 190 B.R. at 74.

*In re Alexander*, 300 B.R. 650, 655 (Bankr. E.D. Va. 2003).

Debtor's case was declared a no-asset case by the Chapter 7 Trustee. In no-asset cases creditors are instructed not to file proofs of claim. If the trustee later discovers assets or assets become available to the estate (e.g., the debtor inherits property within 180 days after the petition date – *See § 541(a)(5))*, the creditors will then be given a deadline for the filing of proofs of claim.

As of the date of this order creditors have not been instructed to file proofs of claim, no assets have been discovered or brought into the estate by operation of law, and no

---

[6] Neither § 523(a)(3)(A) nor § 523(a)(3)(B) are applicable if a creditor has notice or actual knowledge of a debtor's bankruptcy case. In the present case there was no evidence Defendants had knowledge of Debtor's bankruptcy case in time to file a proof of claim in the case.

6

distribution has been made to any unsecured creditor. Since proofs of claim were not filed in this case and because even had Defendants been notified of the bankruptcy case they would have received no distribution, the Defendants were not prejudiced by Debtor's failure to list them on her schedules. In *Alexander* the Court explains this, stating,

> [T]he equitable approach considers two distinguishing characteristics of a chapter 7 no-asset case: 1) there are no funds to be distributed to the creditors; 2) there is no claim filing period. In a case with funds for distribution to creditors, notice allows creditors to exercise their right to file a proof of claim on the debts owed to them. In a no-asset case, unscheduled creditors suffer no prejudice from their omission because "the time for filing a claim has not, and never will, expire unless some exempt assets are discovered …." As a result, § 523(a)(3), regarding notice in time to permit filing of a proof of claim, is never implicated, and creditors never lose their right to file a proof of claim. Addressing the issue of prejudice to an omitted creditor, the Third Circuit stated in Judd that "where there are no assets to distribute … the right to file a proof of claim is a hollow one. An omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim."

*Id* (*quoting Judd v. Wolfe (In re Judd)*, 78 F.3d 110, 114 (3d Cir. 1996)(Internal citations omitted). *See also In re Gardner*, 194 B.R. 576 (Bkrtcy. D.S.C. 1996)(JW); *In re LaScola*, C/A No. 04-09234, slip op. (Bankr. D.S.C. Mar. 04, 2005); *Doughty v. Holt (In re Doughty)*, 195 B.R. 1 (Bankr. D. Me. 1996); *In re Cruz*, 254 B.R. 801, 806 (Bankr. S.D.N.Y. 2000); *In re Houston*, 310 B.R. 224, 225 (Bankr. M.D. Ala. 2004).

The alternate dischargeability issue is whether Defendants' debt was incurred based on false pretenses, a false representation, or actual fraud (§ 523(a)(2)), arises from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny (§ 523(a)(4)), or was incurred by willful and malicious injury by the Debtor to the Defendants (§ 523(a)(6)).[7]

The Defendants assert in their answer and counterclaim that the debt falls under either § 523(a)(2) or (a)(4). This case does not involve embezzlement or larceny, so in order

---

[7] The Court's finding on this issue has a twofold effect: (1) it will determine whether Debtor's failure to list Defendants on her schedules prejudiced them based on their inability to timely request a determination on dischargeability, and (2) it will effectively resolve Defendants' counterclaim.

7

for § 523(a)(4) to apply the debt must have been incurred as a result of fraud or defalcation while the Debtor was acting in a fiduciary capacity.

There was no fiduciary relationship between the Debtor and Defendants. This was a transaction in which Debtor was seller and the adult Defendants were purchasers. Defendants cite no legal authority for the proposition that a seller of property owes a fiduciary duty to the purchaser. This Court has previously observed that the term "fiduciary" as used in § 523(a)(4) has a more restrictive meaning than its common law counterpart. *See In re Owens*, 54 B.R. 162, 164 (Bankr. D.S.C. 1984) ("The term 'fiduciary capacity' as it is used in 11 U.S.C. § 523(a)(4) applies only to technical trusts, express trusts, or statutorily imposed trusts, the term does not apply to fiduciary relationships which arise out of equitable or implied trusts or trusts implied by law as arising out of a contract. Furthermore, the trust or fiduciary duty must have existed prior to the wrongdoing from which the debt arose)(internal citations omitted)); *Arrow Concrete Co. v. Bleam (In re Bleam)*, 356 B.R. 642, 649 (Bankr. D.S.C. 2006) (Detailed discussion of § 523(a)(4)). Defendants' claim fails for two reasons. First, Section 523(a)(4) requires more than an equitable or implied fiduciary relationship, which by the evidence presented does not exist. Second, even if such a fiduciary duty did arise it did so by the transaction itself, and the duty could not have existed prior to the sale. Section 523(a)(4) is not applicable to the debt at issue.

Defendants next contend that the debt falls under § 523(a)(2). Section (a)(2) states that a debt is nondischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud…."[8] *§ 523(a)(2)(A)*. A rather recent Fourth Circuit opinion gives the Court guidance on this issue. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215

---

[8] Section 523(a)(2)(B) applies to false written statements and is not applicable in this case.

8

(4th Cir. 2007) involves a jury award for a personal injury tort claim. In *Nunnery* the Court stated,

> Without considering the "to the extent obtained by" language, the [Bankruptcy] court ruled that under § 523(a)(2)(A) Rountree could not discharge her judgment debt (both compensatory and punitive) in bankruptcy proceedings and granted Nunnery's motion for summary judgment….
>
> The plain language of the subsection under which Nunnery seeks relief requires the debtor to have obtained money, property, services, or credit through her fraud or use of false pretenses. It is clear from the structure of the phrase that "to the extent obtained" modifies the money, property, services, or credit that constitute the debt. A plain reading of this subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit. Structurally, the subsection can have no other meaning.
>
> We adhere to the principle of statutory construction that advises us to "account for a statute's full text." *United States Nat'l Bank v. Independent Ins. Agents of Am.*, 508 U.S. 439, 455, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993). We thus note that in the exceptions to discharge articulated in § 523, Congress provided protection for creditors injured by the torts of bankrupt debtors in subsection (a)(6), which excepts from discharge a debt incurred as a result of the debtor's "willful and malicious injury" to the creditor or her property. It would be unnecessary for subsection (a)(2)(A) also to provide relief for judgment creditors injured in tort. The additional subsection of § 523(a)(2), which excepts from discharge debts for money, property, services, or credit to the extent obtained by use of a false written statement, § 523(a)(2)(B), makes clear that Congress intended § 523(a)(2) to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means. In Nunnery's case, Rountree's fraud may have injured her, but Rountree did not commit the fraud in order to obtain anything in the sense contemplated by § 523(a)(2).

*Id* at 219.

Here, as in *Nunnery,* Defendants' claims are based on personal injury. Any potential liability for personal injury does not fall under § 523(a)(2), and is better addressed under § 523(a)(6). To recover under § 523(a)(2)(A) the Defendants must still show that the sales price for the dwelling was obtained through false pretenses, a false representation, or actual fraud.

The parties' testimony differs as to whether representations were made concerning lead paint. Mrs. Jackson testified that Debtor never mentioned the possibility of lead paint. If this is true[9] then Debtor made no representation at all, and thus, there could have been no false representation. Furthermore, a false pretense requires some intentional act, either by affirmative representation or silence (with knowledge of the fact), on the part of the Debtor. There is no evidence that suggests Debtor intentionally mislead Defendants in an effort to close the sale. Defendants assert that the Debtor's contract of purchase (*Defendants' Exhibit A*) shows that Debtor was on notice that there was a "possibility" the structure contained lead based paint. Even if the Court accepts this as true a "possibility" does not rise to the level of culpability required under § 523(a)(2) to show a false representation or a sale under false pretenses.

Debtor testified that Mrs. Jackson asked her about lead paint, and that she informed her that she was unaware of the presence of any, but she didn't mind if Defendants had the structure tested. If the Court accepts this version of events the evidence still does not support a finding of false pretense or false representation. Debtor testified that she told Mrs. Jackson that she was unaware of the presence of lead paint. There is no evidence that shows that when (and if) Debtor made these statements they were false. She may have had a *reason to believe* there was a possibility of lead paint, but she did not state there was no possibility of lead paint, but merely that she had no knowledge of such. Either version of events leads the Court to the conclusion that there is insufficient evidence to support a finding of false pretense or false representation. *See In re Kirst*, 37 B.R. 275, 276 (Bankr. E.D. Wis. 1983)(Evidence does not warrant a finding of nondischargeability under

---

[9] It is not the Court's intention to imply that Debtor or Mrs. Jackson were being untruthful in their testimony. Both Debtor and Mrs. Jackson appeared to give credible testimony. Mrs. Jackson testified there was no mention of lead paint, and Debtor testified that there was at least some discussion of it. It is the quintessential he-said she-said conundrum.

10

§ 523(a)(2)(A) … when testimony is in direct conflict, and when there is no independent corroborating testimony for either parties' version of events).[10]

The final alternative under § 523(a)(2)(A) is a debt arising from actual fraud. There is no evidence to support a finding of actual fraud. In fact, Defendants do not assert that Debtor had the requisite intent to defraud. Rather, Defendants contend that a violation of RLBPRA is *per se* fraud. First, the Court has been unable to find any legal authority for this proposition. Second, even if Debtor did violate the statute,[11] *per se* fraud does not except a debt from discharge for purposes of § 523(a)(2). *See In re Hunt*, 30 B.R. 425, 436 (Bankr. M.D. Tenn. 1983)("[Section] 523(a)(2) … [requires] actual or positive fraud involving moral turpitude or intentional wrongdoing, and not merely implied fraud, fraud established by a statute or fraud which may exist without imputation of bad faith or immorality…"). Defendants have failed to prove actual fraud.

*Nunnery v. Rountree, supra,* suggests to this Court that dischargeability actions for debts that may arise from personal injury litigation are more appropriately viewed in the context of § 523(a)(6). While Defendants did not plead (a)(6), the Court has analyzed the facts under § 523(a)(6). Section 523(a)(6) makes a debt nondischargeable if the debt arises from willful and malicious injury. Defendants have provided no evidence, direct or circumstantial that could lead to a finding that § 523(a)(6) applies to the present case.

Defendants argue that RLBPRA imposed an affirmative duty on Debtor to inform Defendants of the "possibility" of the presence of lead paint. RLBPRA requires a seller to (1) provide the purchaser with a lead hazard information pamphlet; (2) disclose the presence

---

[10] *Kirst* applied a clear and convincing evidence standard. *Kirst* was decided before the United States Supreme Court's decision in *Grogan v. Garner, Supra,* which holds that evidence regarding exceptions to discharge under § 523(a) is to be evaluated using a preponderance of the evidence standard. In the present case this Court has analyzed the facts using the preponderance of the evidence standard and has found insufficient evidence to support a finding of false pretense or false representation.

[11] Because the Court finds that § 523(a)(2) requires more than fraud implied by law the Court need not determine whether Debtor actually violated RLBPRA.

11

of any known lead-based paint, or any known lead-based paint hazards, and provide to the purchaser any lead hazard evaluation report available to the seller; (3) permit the purchaser a 10-day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards.[12] *See 42 U.S.C. § 4852d and 24 C.F.R. Part 35 et seq.* The enforcement provisions of these requirements as stated in *24 C.F.R. 35.96* are as follows:

> (a) Any person who knowingly fails to comply with any provision of this subpart shall be subject to civil monetary penalties in accordance with the provisions of *42 U.S.C. 3545* and *24 CFR part 30*.
> (b) The Secretary is authorized to take such action as may be necessary to enjoin any violation of this subpart in the appropriate Federal district court.
> (c) Any person who knowingly violates the provisions of this subpart shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.
> (d) In any civil action brought for damages pursuant to 42 U.S.C. 4852d(b)(3), the appropriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails.
> (e) Failure or refusal to comply with §§ 35.88 (disclosure requirements for sellers and lessors), § 35.90 (opportunity to conduct an evaluation), § 35.92 (certification and acknowledgment of disclosure), or § 35.94 (agent responsibilities) is a violation of *42 U.S.C. 4852d(b)(5)* and of TSCA section 409 (15 U.S.C. 2689).
> (f) Violators may be subject to civil and criminal sanctions pursuant to TSCA section 16 (*15 U.S.C. 2615*) for each violation. For purposes of enforcing this subpart, the penalty for each violation applicable under *15 U.S.C. 2615* shall be not more than $ 10,000.

*24 CFR 35.96*. Subsection (a) allows The Director of the Office of Healthy Homes and Lead Hazard Control to initiate a civil money penalty action against any person who knowingly violates *42 U.S.C. 4852d*. This is not relevant to the action at issue. Subsection (b) allows for injunctions and is not relevant to the present case. Subsections (e) and (f) also pertain to civil and/or criminal penalties under the Toxic Substances Control Act and are not relevant to the present case. Subsection (d) is contingent upon liability being found under subsection

---

[12] The Act also requires that any contract of sale contain a "Lead Warning Statement" reciting specific language detailed in the Code of Federal Regulations. *See 24 C.F.R. 35.92(a)(1)*. However, this requirement pertains to "any contract of Sale." There was no contract of sale. Regardless, the remedy for failure to comply with this requirement appears to be recession or avoiding the contract.

(c). Subsection (c) contains a knowledge requirement. The seller must knowingly violate the requirements of RLBPRA in order to recover under 42 U.S.C. 4852d(b)(3) and applicable Federal Regulations.

Debtor testified that she was not aware of the requirements of RLBPRA at the time she sold the structure to Defendants. There is no evidence to the contrary.[13] A breach of duty under RLBPRA is not equivalent to the intent necessary for nondischargeability under § 523(a)(6). *See In re Zaidan*, 86 B.R. 296, 298 (Bankr. S.D. Fla. 1988)( "Under 11 U.S.C. § 523(a)(6) a debt will be excepted from discharge 'for willful and malicious injury by the debtor to another entity or to the property of another entity.' Willful means 'deliberate or intentional.' To except a debt from discharge the creditor must show that there was a specific intent to injure the creditor…. Reckless disregard for others is not sufficient to except a debt from discharge under 11 U.S.C. § 523(a)(6).")(Internal citations omitted). Thus, to have this debt declared nondischargeable under § 523(a)(6) the Defendants would have to prove that the Debtor had knowledge of the requirements under RLBPRA and prove she knowingly failed to comply with the requirements with willful and malicious intent to injure the Defendants. The evidence before the Court does not rise to this level.

Because Defendants' claim does not fall under § 523(a)(2), (4), or (6) Section 523(a)(3)(A) is applicable. Since this is a no-asset chapter 7 case and no proofs of claim were filed by any creditor and no distribution was made to unsecured creditors Defendants were not prejudiced by Debtor failing to list them on her schedules as creditors. Based on § 523(a)(3)(A) and applicable case law Debtor's potential liability to Defendants was discharged by the September 5, 2006 order.

---

[13] Defendants argue that paragraph 13 in Defendants' Exhibit A entitled "LEAD-BASED PAINT TESTING CONTINGENCY," is contrary evidence. However, this is a boiler-plate provision in a stock agreement that would not necessarily put an ordinary buyer on notice that they would be required under federal law to provide lead-based paint disclosures to a purchaser in the future.

13

*B. Violation of discharge injunction.*

The Debtor claims that Defendants' continuing litigation violates this Court's discharge order. Section 524(a) states in relevant part,

> (a) A discharge in a case under this title --
>   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

*11 U.S.C. § 524*. The Court has determined that the debt has been discharged pursuant to § 727(a). One court discussed the discharge injunction, and stated,

> The § 524(a) post-discharge injunction embodies the "fresh start" concept inherent in the Bankruptcy Code by allowing the debtor to begin anew with a debt-free start and without pressure from creditors to repay discharged debts. The injunction is broad in scope and was intended to preclude virtually all actions to collect. *See H.R. Rep. No. 595, 95th Cong., 1st Sess. 363-64(1978)*. Post-discharge lawsuits are clearly prohibited.
>
> [Section] 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." When a violation of the discharge injunction has been found, courts may award damages pursuant to the civil contempt power found in § 105 and Bankruptcy Rule 9020. In such a civil contempt proceeding, damages may consist of actual damages and attorneys fees that the injured party incurred from the violation. Such damages must be based on evidence of actual loss. Additionally, for a willful violation, punitive damages may be awarded. In this context, "willful" means that the creditor knew or was on notice of the stay or discharge and that the action taken was intended, not that the creditor intended to violate the stay or injunction itself. There must be some clear disregard for bankruptcy laws.

*In re Lafferty*, 229 B.R. 707, 713 (Bankr. N.D. Ohio 1998)(Internal citations omitted).

It is undisputed that Defendants were unaware of the Debtors bankruptcy filing at the time they filed the state court action. They first became aware of the filing after Debtor filed her answer to the state court complaint on February 7, 2007. Before this date the Defendants did not willfully violate the discharge injunction. The failure to dismiss the Debtor from the state court litigation after Defendants were served with the answer which indicated that

14

Debtor had received a discharge may be a violation of the discharge injunction. The correct procedure would have been to dismiss Debtor from the state court litigation without prejudice and then file an adversary proceeding seeking a determination of nondischargeability pursuant to § 523(a)(3)(B) and § 523(a)(2), (4), or (6). While the Court finds that there was a violation of the discharge injunction, the Debtor failed to prove any damages.

Debtor testified that she was having family problems that began around "Christmas time." Debtor further testified that after she received the complaint on or about January 17, 2007 she began having panic attacks, was put on medication, and missed two weeks of work. First, in light of the other family problems Debtor was having at that time, there is insufficient evidence to prove that Defendants' complaint was the cause of Debtor's problems. Second, even if the complaint was the sole cause, the only evidence concerning potential damages was in regards to problems that occurred before February 7, 2007, the date Defendants were served with the answer. Debtor provided no evidence of the attorney fees incurred in this proceeding. Punitive damages are not warranted under the facts of this case.

*Conclusion*

Defendants' claim does not fall under § 523(a)(2), (4), or (6), and therefore, pursuant to § 523(a)(3)(A) it was discharged. *§ 727(a)*. Debtor has proven no damages from the violation of the discharge injunction. Defendants are ordered to dismiss Debtor from the state court action.

**AND IT IS SO ORDERED.**
Columbia, South Carolina
February 29, 2008